DAVIS & ROESCH TEMPERATURE CONTROLLING CO. v.
TAGLIABUE et al.

(Circuit Court, E. D. New York. December 31, 1906.)

PATENTS—AGREEMENT TO ASSIGN FUTURE INVENTIONS—CONSTRUCTION.

An assignment by an inventor of certain patents and inventions covered by pending applications, "and any and all inventions of like nature or similar thereto which I have already completed or which may hereafter be completed by me," does not charge a third person with notice that it was intended to cover inventions, which, though similar in character, were not then in existence or even conceived, so as to deprive him of protection as a bona fide purchaser of a patent for an invention made by the assignor afterward, and while in the employ of such third party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 294.]

For former opinion, see 148 Fed. 705.

James C. Chapin, for complainant.

Kenneson, Emley & Rubino (Jay Noble Emley, of counsel), for defendant Tagliabue.

THOMAS, District Judge. After the decision in this suit defendants moved for leave to take additional evidence, which was granted within the limits prescribed in the order. But the additional evidence is of such magnitude as to suggest a wide departure from the order, and the argument has been equally broad. However, the evidence authorized to be taken necessitates some modification of the decision already made. The matter is submitted in such proximity to the termination of the office of the presiding judge that only conclusions can be stated without discussion of the evidence.

The evidence shows an intimacy of personal and business relations between Tagliabue, Roesch, Davis, Hohmann, and Wadsworth that makes it difficult to escape the conclusion that Tagliabue knew that

Roesch was the inventive genius that gave value to the mechanical devices for the manufacture of which the Davis & Roesch Manufacturing Company was formed. That Tagliabue knew that the company owned devices invented by Roesch, and that it was promoting and developing Roesch's inventions, is beyond doubt. Roesch was the real source of invention. His was the genius which all acknowledged, and the benefit of his faculties the contending parties desired. But, even so, it does not follow that Tagliabue knew that Roesch's inventive powers in the art in question were pledged indefinitely to the complainant. Hence the complainant seeks to bring this knowledge home to Tagliabue by actual or constructive notice of the contracts anteceding the employment of Roesch by Tagliabue. In the former decision herein it was found that the October 11, 1897, agreement did carry Roesch's interest in his future inventions within the scope of the art illustrated in the patents therein actually assigned so as to cover the two applications in suit. That decision was much influenced by what the court found to be a practical interpretation by the parties of the assignment of October 11th, as illustrated by the assignment by Roesch of 19 inventions made to the complainant after the assignment of October 11th was made, and to such finding of the meaning and effect of the October 11th assignment there is continuing adherence. The force of the arguments against such conclusion is appreciated without successfully disturbing it. But now, as upon the first hearing, the question is: How far did that assignment give constructive notice to Tagliabue as to future inventions? If by future inventions the parties intended mere improvements on some of the inventions specifically covered by the assignment, the instrument would, it is considered, give constructive notice thereof.

The words in the assignment, "all inventions of like nature or similar thereto," are much broader than the words merely assigning "improvements." The broader words may include the narrower word "improvements." Whether constructive notice would be given by the unlimited use of the language quoted need not be determined, inasmuch as the terms used are modified by the words, "which I have already completed, or which may be hereafter completed by me." What should this language mean to Tagliabue? The court has found it necessary to revert to the subsequent dealings of the parties to aid interpretation, and therefore it cannot be said that the instrument as such was notice to Tagliabue that inventions "hereafter * * * completed" covered the two inventions in suit, which were not in esse, nor, so far as appears, even conceived when the assignment was executed. But did Tagliabue have actual notice? In the first decision reliance was not placed upon the alleged meeting at Mr. von Briesen's office, for its existence was too doubtful to justify, in whole or in part, a conclusion that it existed. That doubt is emphasized by the reversal of Hohmann's evidence, even with Davis' evidence added, and it is not found that such meeting took place. The question, then, comes to whether Davis actually gave Tagliabue notice of this assignment in such definite manner as to put him on inquiry. The burden of proof is on the complainant; and, while the fact is uncertain, it is thought that the burden has not been fulfilled.

How then does this leave the case? It leaves Roesch in the position of being bound to assign his interest in the two patents, for, when they severally came into existence, Roesch was obligated to assign them. But the effect as regards Tagliabue may not be the same. As to him the assignment to the complainant is valid, it is thought, unless he has a right to hold under his employment of Roesch. The invention of. July 22, 1903, No. 167,444, was made before Roesch went into Tagliabue's service, and it was made for the very purpose of turning it over to the complainant, as may be justly inferred from the relation of the parties, their previous conduct, and the sole assignment of October 11th. Tagliabue is entitled to what Roesch invented in his service. This invention was not made in his service, and to allow him to hold it would be to allow him to hold something that equitably belonged to the complainant, and which Tagliabue did not earn as between him and Roesch, and much the more as between him and the complainant. Roesch may be estopped, but the complainant is not.

As to the application No. 166,941, the fact is different. Roesch says that what the complainant calls a "spring" is a screw, and his evidence in that regard is preferred. Hence claim 2 is not understood to cover it. But does claim 7 cover it? Here the parties are at variance as to the meaning of the words, and as against Tagliabue, who must be regarded as a bona fide purchaser as to what was invented under his contract, it is concluded that the controversy involving such difference of opinion should be decided in his favor as to this application.

From the foregoing views it follows that the complainant may have a decree against Roesch for the assignment of both applications and patents therein involved, and against Tagliabue for the assignment of application No. 167,444, and the patent herein involved. It is alleged that Tagliabue has only a quitclaim of whatever rights were left in Roesch. That need not be decided here. The decree will save to Tagliabue whatever rights he has in No. 166,941, notwithstanding any assignment thereof made by Roesch pursuant to the decree.

The complainant should have costs, and three-quarters of its disbursements against both parties. The clerk will enter a decree in accordance with this decision.